**In re GRAND JURY MATTER IMPOUNDED.**

**Nos. 82–1503, 82–1518.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 28, 1983.

Decided March 16, 1983.

Rehearing and Rehearing In Banc Denied April 15, 1983.

Bruce L. Thall, Sprague & Rubenstone, Philadelphia, Pa., for appellants.

Mark C. Del Bianco, Neil R. Ellis, John J. Powers, III, U.S. Dept. of Justice, Edward S. Panek, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for appellee.

Before ADAMS, WEIS and BECKER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In these consolidated appeals we are called upon to decide whether the district court erred when it entered orders denying a petition to quash a grand jury subpoena duces tecum and a petition for access to certain grand jury records. Since the two orders in question are not final for purposes of appeal, we conclude that we lack jurisdiction, and accordingly the appeals will be dismissed.

## I.

A federal grand jury investigating possible antitrust violations in the highway construction industry issued a subpoena duces tecum to a corporation engaged in such construction, commanding the corporation to testify and to bring documents.[1] The subpoena was served on an individual who had recently been president and principal owner of the corporation. Although the individual claims to have had no interest in the corporation named in the subpoena at the time the subpoena was served, he appears to have acknowledged that he had custody of documents referred to in the subpoena. Shortly before the return date of the subpoena, the corporation petitioned in the district court for access to grand jury ministerial records and for disclosure of matters occurring before the grand jury ("the petition for access").[2] The information was requested because counsel for the corporation and the individual had doubts regarding the propriety of the grand jury proceedings, but lacked facts sufficient to support a petition to quash the subpoena. The petition for access had not been acted upon by the return date of the subpoena. For that reason, the corporation and the individual, on the return date, filed a petition to quash the subpoena, citing the Fifth Amendment privilege against self-incrimination. The district court denied the petition for access, explaining that the presumption of regularity which accompanies grand jury proceedings had not been rebutted, and that no particularized need for the information covered by the petition had been shown. The court also concluded—based on an affidavit filed by the government—that at a conference with the government, counsel for the corporation had been provided with sufficient information to advise his clients whether to comply with the subpoena. Shortly after denying the petition for access, the court also denied the petition to quash. It held that a corporation has no Fifth Amendment privilege against self-incrimination, and that the individual's privilege would not be violated by the production of the corporate records. The court denied requests for reconsideration of its refusal to allow access or to quash the subpoena. The present appeals followed, but the subpoenaed material was nevertheless turned over, thus avoiding the possibility of a contempt citation. In No. 82–1503, the corporation and the individual attempt to appeal from the denial of the petition for access. No. 82–1518, brought by the individual, challenges the district court's order declining to quash the subpoena. Appellate jurisdiction is asserted under 28 U.S.C. § 1291 and under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

## II.

The rule governing the appealability of a denial of a motion or petition to quash a grand jury subpoena is clear:

> [O]ne to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey.

*United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). *See also, e.g., Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906); *In re Grand Jury Proceedings (Mills),* 686 F.2d 135, 140–41 (3d Cir.1982); *In re Grand Jury Applicants, (C. Schmidt & Sons, Inc.),* 619 F.2d

---

1. In accordance with an order of the district court, this case has been placed under seal. Our recitation of the facts therefore cannot be as complete as it ordinarily would be.

2. The petition sought: the application for the grand jury summons; the date of the grand jury's empanelment; the roll sheets reflecting the grand jury's composition, by juror number, and dates of attendance; the dates when the grand jury authorized the investigation and subpoena at issue; the description of the subject of the grand jury investigation given to the grand jury; and the charge given the grand jury respecting the subject matter of its investigation and the issuance of its subpoenas.

1022, 1024 (3d Cir.1980). Absent a contempt citation, the denial of a petition to quash a grand jury subpoena is interlocutory and lacks the finality required by 28 U.S.C. § 1291.

The individual appellant relies on a well-established exception to the *Alexander-Cobbledick-Ryan* precept. This exception, which has developed in a long line of decisions beginning with *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), provides that when a party lacks the opportunity to contest a grand jury subpoena by refusing obedience, the order denying the petition to quash is final without the issuance of a contempt citation. We recently stated that

> in contrast with the *Alexander-Cobbledick-Ryan* rule on finality, it has been recognized that when a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally. *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *See also Gravel v. United States,* 408 U.S. 606, 608 n. 1, 92 S.Ct. 2614, 2618, 33 L.Ed.2d 583 (1972); *United States v. Nixon,* 418 U.S. [683] at 691, 94 S.Ct. [3090] at 3099 [41 L.Ed.2d 1039]. In this court we have had several occasions to recognize the distinction between the *Perlman* and the *Alexander-Cobbledick-Ryan* rule.

*Schmidt, supra,* 619 F.2d at 1025 (citations omitted). *Accord Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir.1982).

In *Schmidt,* six employees of C. Schmidt & Sons, Inc. had been served with subpoenas to testify before a grand jury. The employees, and Schmidt as an intervenor, moved to quash the subpoenas. When the motion was denied, the employees and Schmidt took appeals. On the authority of the *Alexander-Cobbledick-Ryan* line, we dismissed the appeal of the employees, since they had not been cited for contempt. In contrast, we reasoned that Schmidt's appeal was on a different footing, for Schmidt was not subpoenaed, and is in the case as an intervenor. The option of resisting compliance and standing in contempt is not available to it, and it is unlikely that a third party, even an employee, would risk a contempt citation in order to provide [Schmidt] with immediate review. 619 F.2d at 1024–25. The rationale of *Schmidt,* in accordance with the *Perlman* exception, is that the denial of the petition to quash was immediately appealable by Schmidt because, as an intervenor, the "contempt route to a final order" was unavailable to it.

■ The individual appellant had the option of obtaining immediate appellate review of his claims by disobeying the subpoena and being cited for contempt. Thus this case falls within the *Alexander-Cobbledick-Ryan* line. The individual appellant argues that, as custodian of the corporate records, he had no grounds for resisting compliance with the subpoena. His position appears to be that as an individual he had the right to assert his Fifth Amendment privilege, but as a custodian of corporate records—in which capacity he was subpoenaed—he had no legal basis on which to refuse to obey. Thus, he seems to argue that his ability to assert his individual rights is dependent on his willingness to disobey a subpoena which in his capacity as custodian he had no legal grounds for disobeying. We understand this to be the ground on which he seeks to take shelter under the *Perlman* exception. This argument, however, is not persuasive. If the individual appellant had a good faith basis for resisting the subpoena, and desired immediate appellate review of his position, he could have permitted himself to be cited for contempt, and then appealed. If, on the other hand, he concluded that the law required compliance with the subpoena, then he had the opportunity to obey. The choice was his whether to accept the commands of the subpoena, and lose the right to immediate appellate review, or to resist the subpoena, accept a contempt citation, and then to obtain review. His situation cannot be analogized to those of the appellants in the *Perlman* line of cases, who, because the subpoenas had not been addressed to them,

lacked the opportunity to have themselves placed in contempt.

■ We suggested in *In re Grand Jury Empanelled August 14, 1979 (TRW Credit Data)*, 638 F.2d 1235, 1238 (3d Cir.1981), that the appellant there, whose appeal from a denial of a motion to quash a grand jury subpoena was dismissed under the *Alexander-Cobbledick-Ryan* rule, "could bring an action for a declaratory judgment, or possibly have the question certified for an interlocutory appeal under the procedure of 28 U.S.C. § 1291(b)." In the present posture of this case, we need not decide whether the suggestions made in *TRW* would provide the individual appellant here with an alternative vehicle for bringing to this Court his objection to the subpoena.[3]

### III.

The appealability of the denial of the petition for access to grand jury records is controlled by *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (3d Cir.1980). In that case the district court had denied a motion, made by Louis Johanson during the course of grand jury proceedings, for a hearing "to investigate the identities of . . . persons responsible for . . . unauthorized disclosures" of the fact that Johanson was a target of investigation. *Id.* at 1037. Johanson allegedly sought the information in order to have these persons disqualified from participating in the grand jury proceedings. Their participation, Johanson maintained, would deprive him of his Fifth Amendment right to an impartial grand jury. After Johanson brought his appeal, but before this Court reached its decision, Johanson was in fact indicted by the grand jury. We held that the denial of the hearing to obtain information was not an appealable order.

We explained at some length that the "collateral order doctrine" could not be invoked on Johanson's behalf:

Appeals before a final judgment terminating the criminal proceedings in the district court are strongly disfavored. For an order to be appealable before a final judgment, it must meet the requirements of the collateral order doctrine. These requirements, originally formulated in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–1226, 93 L.Ed.2d 1528 (1949), have recently been restated by the Supreme Court in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978): the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.

*Id.* at 1038–39 (footnotes omitted). The Court discussed the fact that the order did not meet two of the *Cohen* criteria. First, the issue effectively would be reviewable after final judgment in that any flaws in the grand jury which resulted from the denial of the hearing could be "effectively reviewed by this court and remedied after a conviction has been entered and all criminal proceedings have been terminated in the district court." *Id.* at 1039. Second, the order entered by the district court denying the hearing to obtain access did not conclusively determine the issue being appealed because Johanson could and did raise the same claim in his petition to quash his subsequent indictment. The Supreme Court has recently stated that an order which remains inconclusive "only in the technical sense that every order short of a final decree is subject to reopening at the discretion of the district judge" passes the *Cohen* "conclusiveness" test. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, —— U.S. ——, ——, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983). This pronounce-

---

**3.** The government argues that because the individual appellant fully complied with the subpoena, the appeal is moot. Mootness precludes appellate review when a case has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Because we hold that we have no jurisdiction for lack of an appealable order, we do not reach the question whether the controversy is moot.

ment does not undermine *Johanson's* construction of the *Cohen* factors.[4]

 *Johanson's* application of the *Cohen* doctrine is equally appropriate to the facts of the present appeal from the denial of access. The appellants here sought access to information in order to challenge the propriety of the grand jury proceedings. They claim that their rights to due process of law and effective assistance of counsel demand that they be given the material they seek. But as we noted in *Johanson,* flaws in grand jury proceedings are reviewable after conviction. As *Johanson* also suggests, the petition for access could be raised again after an indictment has been issued and so the order appealed from does not conclusively determine the issue. Thus the denial of the petition for access is not now reviewable by this Court.[5]

This result is consistent with the reasoning underlying the *Alexander-Cobbledick-Ryan* rule. In *Cobbledick,* for example, the Supreme Court stressed the need for safeguarding the orderly progress of the grand jury:

> The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes "a judicial inquiry," *Hale v. Henkel,* 201 U.S. 43, 66 [26 S.Ct. 370, 375, 50 L.Ed. 652], of the most ancient lineage. See

> *Wilson v. United States,* 221 U.S. 361 [31 S.Ct. 538, 55 L.Ed. 771]. The duration of its life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the "orderly progress" of investigation should no more be encouraged in one case than in the other.

309 U.S. at 327, 60 S.Ct. at 542. The basic principle that only final judgments are appealable "has particular force in criminal prosecutions." *United States v. MacDonald,* 435 U.S. 850, 853–54, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978) (citing *Cobbledick*).[6] Cf. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

This prescription on occasion can lead to harsh consequences, yet without it the criminal process would be subject to continual interruptions. As we stated in *TRW, supra,* 638 F.2d at 1236:

> [I]f an ongoing grand jury proceeding could be interrupted each time that a potential witness or holder of relevant records wished to contest an appearance or disclosure, the ability of grand juries promptly to perform their task would be seriously compromised. See *Cobbledick, supra,* 309 U.S. at 327–29, 60 S.Ct. at 542–43.

We are aware that our holding that the denial of the motion for access is unappeal-

---

4. *See United States v. Litman,* 661 F.2d 17, 19 (3d Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982), in which we characterized *Johanson* as "suggesting [that the] denial of [a] pretrial evidentiary hearing on prosecutorial misconduct is nonappealable because post-conviction relief may remedy [a] putative denial of right to [an] impartial grand jury, but holding that the pretrial order did not conclusively determine the issue."

*Johanson* is but one example of what in *Akerly v. Red Barn Systems, Inc.,* 551 F.2d 539, 543 (3d Cir.1977), we referred to as this Circuit's "restrictive attitude toward the collateral order doctrine." *But cf. In re Grand Jury Empaneled January 21, 1975 (Curran),* 536 F.2d 1009, 1011 n. 1 (3d Cir.1976).

5. The appellants in the present proceeding argue that quite apart from *Cohen* the orders in this case denying access are final and therefore appealable. This argument is foreclosed by the holding in *Johanson* that the order in that matter denying access was not appealable.

6. *But cf. Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (both holding pretrial orders appealable where, as we noted in *Litman, supra,* 661 F.2d at 19, "defendants invoked a constitutional privilege not to be tried.")

able may be difficult to reconcile with the Ninth Circuit's decision in *In re Special Grand Jury (For Anchorage, Alaska),* 674 F.2d 778, 783–84 (9th Cir.1982). The appellants in that proceeding had moved in the district court for access to ministerial records concerning the special grand jury that was investigating them. The court of appeals held that the district judge's order, denying the motion for access on the grounds that the movants lacked standing, was appealable.

In support of its holding on appealability, the *Anchorage* court cited *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) and *Illinois v. Sarbaugh,* 552 F.2d 768 (7th Cir.), *cert. denied,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). In *Douglas Oil,* several independent gasoline dealers had brought civil antitrust actions in the District of Arizona against a number of oil companies. In connection with this action, the dealers petitioned the District Court for the Central District of California for transcripts of grand jury proceedings that had taken place in that district. These grand jury proceedings had culminated in a price-fixing indictment to which the oil companies had entered pleas of *nolo contendere.* When the district court in California ordered the grand jury transcripts produced, the oil companies appealed to the Ninth Circuit, which affirmed the disclosure order. Justice Powell, speaking for the Supreme Court, discussed the merits of the case without adverting to any possibility that the district court's order might not have been appealable. Justice Rehnquist's concurrence, however, addressed the issue and provisionally concluded that "since an order such as is involved in this case disposes of all of the contentions of the parties and terminates a separate proceeding pending before the grand jury court, it is therefore appealable as a 'final decision' under 28

U.S.C. § 1291." 441 U.S. at 233, 99 S.Ct. at 1680.

The facts in *Sarbaugh* are similar to those of *Douglas Oil.* There, the plaintiff in a civil antitrust action filed in the Southern District of Illinois was denied permission by the District Court for the Eastern District of Illinois to inspect and copy transcripts of an Eastern District grand jury. According to *Sarbaugh,* the petition in the Eastern District

> was filed there as an independent proceeding after the discharge of the grand jury and the termination of the criminal action initiated by the indictment. This subsequent independent proceeding was terminated by the District Court's order denying the petition, which "disposes of the contentions of all the parties, leaving nothing else to be decided," "ends the controversy before" the District Court, and is therefore appealable under 28 U.S.C. § 1291.

552 F.2d at 773 (citations omitted).[7]

*Douglas Oil* and *Sarbaugh* both involved a procedural setting substantially different from that presented in this appeal from the order denying access. The corporation here has not commenced an *independent* proceeding to gain access to information about a *completed* grand jury investigation. On the contrary, it sought the material in order to challenge the very grand jury investigation to which it was then being subjected. The denial of the petition for access was one step in an ongoing grand jury proceeding, not the termination of an independent civil proceeding.

The court in *Anchorage* noted that the "movants were not seeking to challenge the grand jury, but to inspect ministerial court records. Their standing, if they had standing, did not derive from any alleged right to challenge the grand jury, but from their

---

**7.** *See also In re Grand Jury Proceedings (United States of America, Appellant),* 309 F.2d 440 (3d Cir.1962) (assuming appealability of order denying Federal Trade Commission, which was investigating possible violations of cease and desist order, access to documents and testimony from grand jury proceedings that had culmi-

nated in indictments and eventual convictions.) *Cf. In re Grand Jury Matter (Catania),* 682 F.2d 61 (3d Cir.1982) (accepting appeal, by subject of completed federal investigation, from an order of the federal district court allowing county district attorney access to transcripts of federal grand jury proceedings).

alleged common-law right of access to court records." 674 F.2d at 780. In one respect, then, *Anchorage* is distinguishable from the present matter. Appellants here have made no attempt to rely on a common-law right of access, and their petition is based solely on their alleged need to ascertain the validity of the subpoena addressed to them. We are not called upon to decide whether the order denying access would have been appealable had it disposed of a petition or motion made under the common-law right of access to court records. Thus our holding today is not squarely in conflict with that of *Anchorage*. Insofar as *Anchorage* may suggest, however, that an order denying access is appealable regardless of the grounds on which the petition or motion for access is made, *see* 674 F.2d at 779 n. 2, we cannot agree.

### IV.

Since neither of the orders at issue here is appealable, the appeals will be dismissed for lack of jurisdiction.[8]

---

8. "[B]ecause we have no jurisdiction we are powerless to comment upon the merits."

*TRW, supra,* 638 F.2d at 1238.