UNITED STATES of America, Appellee,

v.

ARCHER–DANIELS–MIDLAND COMPANY and Nabisco Brands, Inc., Appellants.

No. 85–1050.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1985.

Decided Feb. 24, 1986.

David A. Donohoe, Washington, D.C., for Archer-Daniels-Midland Co.

J. Randolph Wilson, Washington, D.C., for Nabisco Brands.

Margaret G. Halpern, Washington, D.C., for appellee.

Before BRIGHT, Senior Circuit Judge, ROSS and JOHN R. GIBSON, Circuit Judges.

BRIGHT, Senior Circuit Judge.

This appeal arises from a civil antitrust suit brought by the Government against the Archer-Daniels-Midland Company (ADM) and Nabisco Brands, Inc. (Nabisco). ADM and Nabisco moved for dismissal, or for alternative relief, on the ground that the Government violated Fed.R.Crim.P. 6(e), the rule protecting the secrecy of grand jury proceedings. The district court [1] denied their motion and this appeal followed. ADM and Nabisco contend that the Government violated Fed.R.Crim.P. 6(e) by assigning attorneys who participated in a prior grand jury investigation to this subsequent civil litigation without first obtaining a court order. In addition, ADM and Nabisco argue that Fed.R.Crim.P. 6(e) has been violated because the attorneys working on this case have continuously possessed grand jury documents in their personal files. The Government submits that the district court order is a nonappealable interlocutory order. We hold that the district court order is appealable pursuant to the collateral order doctrine, that the assignment of attorneys in this case does not constitute, by itself, a violation of Fed. R.Crim.P. 6(e), and that there has been no showing that grand jury documents have been used in violation of Fed.R.Crim.P. 6(e). Accordingly, we affirm the district court's ruling.

## I. BACKGROUND.

In 1979, a federal grand jury was impaneled in the Northern District of California to investigate possible price-fixing by companies engaged in corn wet milling. The grand jury questioned many witnesses and collected approximately 700,000 documents, covering a time period from 1973 to 1980. Both ADM and Nabisco produced documents under subpoena. Those documents, and all others produced by the grand jury, came under protection and control of the Department of Justice in Washington, D.C., as custodian.[2] The grand jury concluded its investigation in late 1980 without issuing any indictments.

On June 12, 1982, Nabisco leased its corn wet milling facilities to ADM. As a result, ADM became the nation's largest manufacturer of high fructose corn syrup. In July of 1982, the Antitrust Division of the Justice Department began a civil investigation to determine whether the lease agreement amounted to an acquisition or merger in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 7 of the Clayton Act, 15 U.S.C. § 18. Some of the attorneys assigned to the investigation had previously worked on the grand jury price-fixing investigation. On December 14, 1982, the Government filed a civil antitrust complaint against ADM and Nabisco.

In December 1983, ADM and Nabisco moved to dismiss the complaint without prejudice on the ground that the Government violated Fed.R.Crim.P. 6(e)(2), by assigning attorneys who participated in the prior grand jury investigation to this subsequent civil litigation without first obtaining a court order.[3] On March 29, 1984, the district court denied the motion, concluding that no evidence before the court established that any improper disclosure had occurred. On April 11, 1984, ADM and Nabisco moved for a clarification of the district court order and also for a preliminary injunction barring any disclosure of

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

2. An Impounding Order, still under seal, was entered by Chief Judge Roger F. Peckham of the United States District Court for the Northern District of California on March 7, 1980.

3. ADM and Nabisco and the Government also filed cross-motions for summary judgment.

These motions raised the issue of whether the lease agreement constituted an acquisition within the meaning of section 7 of the Clayton Act. The district court ruled that it did. *United States v. Archer-Daniels-Midland Co.,* 584 F.Supp. 1134, 1140 (S.D.Iowa 1984), *appeal dismissed,* Misc. No. 84–8065 (8th Cir. May 29, 1984).

grand jury materials by or to Government counsel (or their assistants) except pursuant to a Rule 6(e)(3)(C) order, and barring any further participation in this case by Government counsel and legal staff who at the time had access to such materials. On April 20, 1984, the district court denied the motion for clarification of its prior order, yet did enter limited injunctive relief. The court said:

[T]he plaintiff and each attorney or assistant to such attorney representing the plaintiff in this case and to whom no grand jury material has previously been disclosed or made accessible are hereby enjoined and restrained from requesting, receiving, reviewing, reading, or otherwise obtaining any grand jury material except as expressly permitted by a Court under Rule 6(e)(3)(C) of the Federal Rules of Criminal Procedure, and each government attorney, including any assistant to such attorney, who represents plaintiff in this case and to whom any grand jury material has previously been disclosed, or made accessible, whether authorized by law or not, is hereby enjoined and restrained from disclosing or making accessible any grand jury material to any government attorney or assistant who is prohibited from receiving such grand jury material under the provisions of the preceding portion of this preliminary injunctive order.

In September 1984, after deposing five present and former Government attorneys and staff members, ADM and Nabisco filed a "renewed" motion in which they requested dismissal of the Government's complaint, or various forms of alternative relief, again on the ground that the Government violated Fed.R.Crim.P. 6(e).[4] On November 6, 1984, the district court denied this motion.[5]

**4.** ADM's and Nabisco's "renewed" motion read as follows:

For reasons more fully set forth in their respective Memoranda filed herewith, defendants Archer-Daniels-Midland Company and Nabisco Brands, Inc. hereby move for an order granting, in the alternative, the following relief:
I. Dismissing the complaint without prejudice; or
II. Conditioning the continuance of the action upon plaintiff's obtaining, within a prescribed period, an order pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i) permitting all parties access to all grand jury material previously disclosed to any member of plaintiff's staff; or
III. Prescribing the following mandatory and prohibitory injunctive relief against plaintiff:
(A) disqualifying economist John R. Sawyer from any further involvement in this case;
(B) disqualifying from any further involvement in this case all members of the legal staff who have worked or who are currently working on this case;
(C) ordering removal from the files of this case of all internal work product prepared by all members of the legal staff who have worked or are currently working on this case;
(D) barring from use in this case all depositions taken by the plaintiff;
(E) ordering a thorough search of the files of all personnel ever involved in this case by Mr. Douse, an attorney able to identify grand jury documents, in order to segregate and impound all corn products grand jury materials found therein; and

(F) precluding any staff member thus disqualified from engaging in any communication, directly or indirectly, with any member of the replacement staff with respect to this proceeding.
The requested relief is warranted because plaintiff has engaged in unlawful disclosure of secrets obtained from the corn products grand jury in violation of Fed.R.Crim.P. 6(e) and the doctrine established by the Supreme Court in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). This relief is required both to cure the problems created by the plaintiff's conduct and to deter future abuses of the grand jury process.

**5.** The November 6, 1984, district court order read as follows:

Defendants' renewed motion to dismiss complaint without prejudice, or for alternative relief, pursuant to *United States v. Sells Engineering*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), is before the court for ruling.
A review of the briefs and the discovery material leads the court to conclude that the injunctive relief granted on April 20, 1984, remains adequate, and that neither dismissal nor any of the alternative relief sought by defendants is appropriate.
It is not a violation of Fed.R.Crim.P. 6(e)(2), as interpreted in *United States v. Sells, supra,* for an attorney who attended the grand jury to participate in this case, which is unrelated to the grand jury investigation.

Thereafter, on January 7, 1985, ADM and Nabisco appealed. These appellants contend that the Government violated Fed. R.Crim.P. 6(e) by assigning attorneys who participated in the prior grand jury investigation to this subsequent civil litigation without first obtaining a court order. Furthermore, they charge violations of Fed.R.Crim.P. 6(e) because the attorneys working on this case have continuously possessed grand jury documents in their personal files. ADM and Nabisco base their argument on the Supreme Court's interpretation of Fed.R.Crim.P. 6(e) in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). The Government argues that the November 6, 1984, district court order amounts to a nonappealable interlocutory order. The Government further argues that if this court should reach the merits, then it should conclude that Fed.R.Crim.P. 6(e) and the *Sells* decision do not prohibit the assignment to this case of attorneys who previously conducted the grand jury investigation, and that there has been no showing that grand jury documents have been used in violation of Fed.R.Crim.P. 6(e).

## II. DISCUSSION.

### A. Appealability.

We first address the Government's contention that this interlocutory appeal should be dismissed for lack of appellate jurisdiction. ADM and Nabisco argue, to the contrary, that the November 6, 1984, district court order may be appealed under the collateral order doctrine. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). We agree.[6]

▮ The collateral order doctrine represents a "narrow exception to the requirement that all appeals under § 1291 await

final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). Its "reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson-Merrell, Inc. v. Koller*, —— U.S. ——, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (citations omitted). To fall within this exception, a district court order must at a minimum "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). We believe that the district court order in issue meets this test.

The order conclusively determined that the assignment of attorneys who participated in previous grand jury proceedings to this civil case did not constitute a violation of Fed.R.Crim.P. 6(e)(2). It thereby resolved an important issue completely separate from the merits of the action. Furthermore, because the district court order concerns the secrecy of grand jury proceedings, it is effectively unreviewable on appeal from a final judgment. Any harm to ADM's and Nabisco's interests which are sought to be protected by keeping grand jury proceedings secret cannot be undone by a later reversal of the district court order.

The Supreme Court recently held that an order denying a motion to disqualify the opposing party's counsel in a civil case may not be appealed under the collateral order doctrine because such an order can be effectively reviewed on appeal from a final judgment. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. at 377, 101 S.Ct. at 675.

---

The record discloses questionable "storage" practices by the Justice Department in respect to grand jury materials, but does not disclose any violation of Rule 6(e)(2) that is material to this lawsuit.

Defendants' motion to dismiss or for alternative relief is denied in its entirety.

6. Because we conclude that the district court order is appealable under the collateral order doctrine, we need not address ADM's and Nabisco's contention that we also have jurisdiction based on 28 U.S.C. § 1292(a)(1) or that we should review this case by issuing a writ of mandamus.

We believe, however, that the present case is qualitatively different from *Firestone.* As discussed above, the district court in this case did more than simply deny a motion to disqualify counsel. The district court order concerns the secrecy of grand jury proceedings. Therefore, without immediate review, ADM and Nabisco face the possibility of losing "the legal and practical value" of the rights they have asserted. In *Firestone,* the Supreme Court indicated that in such situations an appeal may be allowed under the collateral order doctrine. 449 U.S. at 377, 101 S.Ct. at 675. *See also Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (district court's denial of a claim of qualified immunity is immediately appealable because otherwise the defendant's right to be immune from suit would be effectively lost); *Evans v. Dillahunty,* 711 F.2d 828 (8th Cir.1983). Accordingly, we conclude that we have jurisdiction over this appeal.[7]

### B. Alleged Fed.R.Crim.P. 6(e) Violations.

ADM and Nabisco first contend that Fed.R.Crim.P. 6(e) and *Sells* prohibit the assignment of Justice Department attorneys who participated in the prior grand jury investigation to this subsequent civil litigation without first obtaining a court order. We disagree.

Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy.[8] It provides that

---

**7.** It is important to note that we continue to support the policy against piecemeal appellate review. *See In re 1985 Grand Jury Proceedings,* 785 F.2d 593 (8th Cir. 1985). The present case, however, contains that rare circumstance in which a party's rights may be effectively lost if the case is erroneously permitted to go to trial.

**8.** Rule 6(e) provides, in pertinent part, as follows:

**(e) Recording and Disclosure of Proceedings.**

**(1) Recording of Proceedings.** All proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device. An unintentional failure of any recording to reproduce all or any portion of a proceeding shall not affect the validity of the prosecution. The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.

**(2) General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

**(3) Exceptions.**

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;

(iii) when the disclosure is made by an attorney for the government to another federal grand jury; or

(iv) when permitted by a court at the request of an attorney for the government, upon

grand jurors, Government attorneys and their assistants, and other grand jury personnel are forbidden from disclosing matters occurring before the grand jury. There are several exceptions to this nondisclosure rule. Under Rule 6(e)(3)(A)(i), disclosure may be made without a court order to "an attorney for the government for use in the performance of such attorney's duty." In addition, Rule 6(e)(3)(C)(i) permits courts to order disclosure.

In *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), the Supreme Court addressed the question of whether attorneys for the Civil Division of the Justice Department may obtain automatic 6(e)(3)(A)(i) disclosure of grand jury materials, compiled with the assistance of other Justice Department attorneys, for the purpose of preparing and pursuing a civil suit, or whether they must seek a 6(e)(3)(C)(i) court order for access. The Court held that automatic 6(e)(3)(A)(i) disclosure is limited to use by those attorneys who conduct the criminal matters to which the materials pertain. *Id.* at 427, 103 S.Ct. at 3139. Therefore, Civil Division attorneys may obtain access to grand jury materials, prepared with the assistance of other Justice Department at-

torneys, for use in a civil suit only by moving for court-ordered disclosure under Rule 6(e)(3)(C)(i) and by showing the particularized need required by that Rule. *Id.* at 420, 103 S.Ct. at 3136.[9]

■ In the present case, the threshold question is whether the assignment to a civil case of the same attorneys who participated in a prior grand jury investigation even constitutes disclosure of matters that occurred before the grand jury. We hold that it does not. For there to be a disclosure, grand jury matters must be disclosed to *someone*. We do not believe that an attorney's recollection of facts learned from his prior grand jury participation can be considered disclosure so as to invoke the prohibition of Rule 6(e).

■ ADM's and Nabisco's argument essentially comes down to saying that Government attorneys who participate in a grand jury proceeding must be prohibited from litigating a subsequent civil case involving companies who had been part of the grand jury investigation. We do not believe that Rule 6(e), as interpreted by *Sells*, can be read to reach that far.[10]

*Sells* concerned the use of grand jury materials by Civil Division attorneys in the

a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law.
If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.
(D) A petition for disclosure pursuant to subdivision (e)(3)(C)(i) shall be filed in the district where the grand jury convened. Unless the hearing is ex parte, which it may be when the petitioner is the government, the petitioner shall serve written notice of the petition upon (i) the attorney for the government, (ii) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and (iii) such other persons as the court may direct. The court shall afford those persons a reasonable opportunity to appear and be heard.
(E) If the judicial proceeding giving rise to the petition is in a federal district court in another district, the court shall transfer the matter to that court unless it can reasonably obtain sufficient knowledge of the proceeding

to determine whether disclosure is proper. The court shall order transmitted to the court to which the matter is transferred the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand jury secrecy. The court to which the matter is transferred shall afford the aforementioned persons a reasonable opportunity to appear and be heard.

**9.** *See also United States v. Baggot*, 463 U.S. 476, 483, 103 S.Ct. 3164, 3169, 77 L.Ed.2d 785 (1983) (holding that an Internal Revenue Service investigation to determine a taxpayer's civil tax liability is not "preliminar[y] to or in connection with a judicial proceeding" within the meaning of Rule 6(e)(3)(C)(i), and therefore no disclosure is available under that Rule).

**10.** Furthermore, ADM's and Nabisco's reliance on *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973), is misplaced. *McDaniel* has nothing to do with Rule 6(e). It merely holds that because the federal prosecutor had read McDaniel's immunized state testimony, his federal conviction was obtained in violation of his fifth amendment rights.

Justice Department who had not participated in the grand jury proceedings. In that case, in other words, matters occurring before a grand jury were disclosed by attorneys who participated in the grand jury to attorneys who had not. Here, on the other hand, the same attorneys who participated in the grand jury proceedings were assigned to the subsequent civil litigation. *Sells* simply does not support ADM's and Nabisco's argument that such assignment constitutes disclosure of grand jury matters in violation of Rule 6(e).[11] In the *Sells* case there were two sets of attorneys, and a disclosure occurred, whereas in the present case there is only one set of attorneys, and no disclosure. Furthermore, our decision is strengthened by the fact that the civil antitrust suit brought by the Government against ADM and Nabisco alleging an unlawful acquisition or merger is a distinct and separate action from the prior grand jury investigation for price-fixing. In *Sells*, grand jury materials were being sought for use in the civil phase of the same matter that had been investigated by the grand jury, that is not the case here. Accordingly, we affirm the district court's ruling that the assignment of Justice Department attorneys who participated in a prior grand jury investigation to this current civil case, without a court order, does not violate Rule 6(e).

ADM and Nabisco also contend that the Justice Department attorneys prosecuting this civil case have continuously possessed grand jury documents in their offices and files in violation of Rule 6(e). The district court ruled that the Justice Department had engaged in questionable storage practices, but had not violated Rule 6(e). On the record presented to us, we agree with the district court's conclusion.

An Impounding Order was entered instructing the Antitrust Division to store the grand jury materials in Washington, D.C. There has been no showing that these materials have been disclosed in violation of Rule 6(e), or that Government attorneys are making continued use of them in this civil case.[12] All that the record shows is a continued possession of some documents that the Government attorneys have a right to possess.[13]

## III. CONCLUSION.

Based on the foregoing reasoning, we affirm the district court's denial of ADM's and Nabisco's motion for dismissal, or for alternative relief.

---

11. The Supreme Court expressly stated that *Sells* did not address the "continued use of grand jury materials, in the civil phase of a dispute, by an attorney who himself conducted the criminal prosecution." *United States v. Sells Engineering, Inc.,* 463 U.S. at 431 n. 15, 103 S.Ct. at 3141 n. 15. Clearly, then, it also did not address the issue presented here, whether the assignment to a civil case of the same attorneys who participated in a prior grand jury investigation amounts to a disclosure in violation of Rule 6(e).

12. In *In re Grand Jury Investigation,* 774 F.2d 34, 40 (2d Cir.1985), the Second Circuit concluded that continued access to, and use of, grand jury "materials by the attorneys pursuing the civil matter to refresh their recollection as to documents or testimony to which they had access in the grand jury proceeding" amounts to further disclosure requiring a Rule 6(e) court order. We believe that the present case is different from *In re Grand Jury Investigation, supra,* because it does not contain a clear showing of continued use of grand jury materials by attorneys assigned to the civil litiation to refresh their recollection.

13. We note that the Government states that the attorneys who had access previously have not used and will not use grand jury materials in this case, except as has been required to respond to defendants' discovery efforts on this issue.